**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

| | | |
|---|---|---|
| TERRY L. OTTER, | * | |
| ADC #97148 | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | No. 5:10-cv-00301-JLH-JJV |
| SHERI FLYNN, *Administrator, Sex Offender* | * | |
| *Screening and Assessment Committee* | * | |
| | * | |
| Defendant. | * | |

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to Chief United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

1

3.     The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

Plaintiff, Terry Otter, a state inmate at the Tucker Unit of the Arkansas Department of Correction (ADC), filed this *pro se* action alleging a constitutional violation against Sheri Flynn, the Administrator of the Sex Offender Screening and Assessment Committee.  Having reviewed the Complaint, the Court finds this case should be dismissed because Plaintiff has failed to state a claim upon which relief may be granted.

## I.     SCREENING

The Prison Litigation Reform Act (PLRA) requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(A)(b).

An action is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v.*

*Williams*, 490 U.S. 319, 325 (1989).  Whether a plaintiff is represented by counsel or is appearing *pro se*, his complaint must allege specific facts sufficient to state a claim.  *See Martin v. Sargent*, 780 F .2d 1334, 1337 (8th Cir.1985).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  In reviewing a *pro se* complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  The Court must also weight all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless.  *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## II.    ANALYSIS

In his Complaint, Mr. Otter states, "Plaintiff specifically alledges [*sic*] that he was 'unlawfully screened' by the named defendants, on March 11, 2008."  (Doc. No 2 at 4).  He challenges that he was required to undergo sex offender screening when the state statute specifically contemplates screening of offenders who were convicted on or after August 1, 1997.  Plaintiff cites to the Arkansas' Sex Offender Registration Act of 1997, ARK. CODE ANN. § 12-12-901, which specifically applies to, "A person who is adjudicated guilty on or after August 1, 1997, of a sex offense." ARK. CODE ANN. § 12-12-905(a)(1).

A plain reading of the statute initially appears to favor Plaintiff's argument.  However, this issue requires closer constitutional scrutiny.  Plaintiff essentially brings a claim that the Arkansas' Sex Offender Registration Act of 1997 is an unconstitutional *ex post facto* law because it imposes retroactive punishment - sex offender screening in Otter's case - for commission of a sex offense prior to August 1, 1997.  Plaintiff's two rape convictions were adjudicated in 1991, well before the

3

enactment of the Act.

The United States Court of Appeals for the Eighth Circuit has analyzed this issue in the sex

offender registry context, and stated:

> The *Ex Post Facto* Clause of Article I, Section 10 of the Constitution prohibits the
> States from enacting laws that increase punishment for criminal acts after they have
> been committed. See generally *Calder v. Bull*, 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed.
> 648 (1798) (Chase, J., seriatim). In determining whether a state statute violates the
> *Ex Post Facto* Clause by imposing such punishment, we apply the framework
> outlined in *Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003),
> where the Supreme Court considered an *ex post facto* challenge to an Alaska statute
> requiring sex offenders to register. Under that framework, we must first "ascertain
> whether the legislature meant the statute to establish 'civil' proceedings." *Id.*
> (internal quotation omitted). If the legislature intended criminal punishment, then
> the legislative intent controls the inquiry and the law is necessarily punitive. *Id.* If,
> however, the legislature intended its law to be civil and nonpunitive, then we must
> determine whether the law is nonetheless "so punitive either in purpose or effect as
> to negate" the State's nonpunitive intent. *Id.* (internal quotations and citations
> omitted). "[O]nly the clearest proof" will transform what the legislature has
> denominated a civil regulatory measure into a criminal penalty. *Id.*

*Doe v. Miller*, 405 F.3d 700 (8th Cir. 2005).

A year later, the Eighth Circuit Court of Appeals, utilizing their holding in *Miller*,

considered an *ex post facto* challenge to the residency restriction of the Arkansas' Sex Offender

Registration Act of 1997. In analyzing the Act, the Court held as follows:

> [W]e conclude that the Arkansas General Assembly intended to create a civil,
> non-punitive regulatory scheme when it enacted the residency restriction. The
> General Assembly first passed the Registration Act, finding specifically that
> "protecting the public from sex offenders is a primary governmental interest," and
> that the "release of certain information about sex offenders to criminal justice
> agencies and the general public will assist in protecting the public safety." ARK.
> CODE ANN. § 12-12-902. The Supreme Court of Arkansas then held that the General
> Assembly's intent in enacting the Registration Act was to protect public safety, and
> not to punish sex offenders. *Kellar v. Fayetteville Police Dep't*, 339 Ark. 274, 5
> S.W.3d 402, 407 (1999). The residency restriction was enacted as part of a bill
> relating to sex offender registration, including amendments to the Registration Act,
> 2003 Ark. Acts 330, and it works in tandem with the registration requirement. By its
> terms, the residency restriction applies to certain offenders who are "required to
> register under the Sex Offender Registration Act," and who are classified as "high

4

risk" or "sexually violent predators" under the Act and Guidelines. ARK. CODE ANN. § 5-14-128(a). As in *Miller*, we believe that the available evidence leads most naturally to the inference that the residency restriction, like the registration requirements, were intended to protect the public safety, and that the purpose of the Arkansas General Assembly was regulatory and non-punitive. *See Miller*, 405 F.3d at 719.

In considering whether the Arkansas residency restriction is nonetheless so punitive in effect as to negate the legislature's intent to create a civil, non-punitive regulatory scheme, we believe that Arkansas law is on even stronger constitutional footing than the Iowa statute. Unlike the Iowa law, the Arkansas statutory plan calls for a particularized risk assessment of sex offenders, which increases the likelihood that the residency restriction is not excessive in relation to the rational purpose of minimizing the risk of sex crimes against minors. This fine-tuning of the restriction addresses the principal concern of the dissenting judges who believed the Iowa statute violated the *Ex Post Facto* Clause. *Miller*, 405 F.3d at 725-26 (Melloy, J., concurring and dissenting); *Seering*, 701 N.W.2d at 672 (Wiggins, J., concurring in part and dissenting in part). Because the other factors in the ex post facto analysis here are comparable to those discussed in *Miller*, 405 F.3d at 719-21, and the "rational connection" of the residency restriction is even closer to a nonpunitive purpose, we conclude that the Arkansas statute is not an unconstitutional *ex post facto* law.

*Weems v. Little Rock Police Dept.*, 453 F.3d 1010, 1017 (2006).

This Court recognizes that the issue in *Weems* was slightly different given the plaintiff challenged the residency restriction. However, the analysis is still the same and leads this Court to conclude that Plaintiff's *ex post facto* challenge must fail. Moreover, the Court in *Weems* analyzed that the screening requirement – the issue Mr. Otter challenges – was a provision of the Arkansas law giving it "even stronger constitutional footing" than laws in other states. *Id.*

## III.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1.      Plaintiff's Complaint (Doc. No. 2) should be DISMISSED without prejudice for failure to state a claim upon which relief may be granted.

2.      All pending motions be denied as moot.

3.      Dismissal of Plaintiff's Complaint constitutes a "strike" within the meaning of the

Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915(G).[1]

DATED this <u>5th</u> day of April, 2011.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

---

[1]The PLRA provides: "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted...."  *See Patton v. Jefferson Correctional Center*, 136 F.3d 458, 462-64 (5th Cir. 1998), where the court held that dismissal of a 42 U.S.C. Section 1983 action in part as frivolous, and in part for failure to exhaust state court remedies as a habeas claim, should count as a strike within the meaning of Section 1915(g).